IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID VEGA, | : | CIVIL ACTION NO. **3:12-CV-1767** |
| | : | |
| Plaintiff | : | (Judge Conaboy) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| SCOTT DUNLAP, *et al.*, | : | |
| | : | |
| Defendants | : | |

## REPORT AND RECOMMENDATION

### I.    BACKGROUND

On August 8, 2012, Plaintiff David Vega filed, *pro se*, this instant civil rights Complaint

pursuant to 42 U.S.C. § 1983 in the United States District Court for the Eastern District of New

York as case number 1:12-cv-04030.  (Doc. 1).  Plaintiff also attached Exhibits to his Complaint.

(Doc. 1, pp. 6-10).  Plaintiff also filed a Motion for Leave to Proceed *in forma pauperis* on that

same date.   (Doc. 2).   Plaintiff was formerly confined as an inmate at Rikers Island, East

Elmhurst, New York, and he now currently resides at 162 West Kingsbridge Road, Apartment

4G, Bronx, New York 10463.  (Doc. 1, p. 2).

On September 4, 2012, Judge Matsumoto of the Eastern District of New York signed a

Transfer Order effectively transferring the case to the Middle District of Pennsylvania with the

reasoning that the Middle District of Pennsylvania is a more appropriate forum due to the

Defendants' location in Monroe County, Pennsylvania, and because the incident in question

occurred in Monroe County.  (Doc. 4).  The case was given a new case number listed above

when it was electronically transferred the following day to the Middle District of Pennsylvania

on September 5, 2012.  (Doc. 5).

In his Complaint, Plaintiff names the following five (5) Defendants: Detective Scott Dunlap; Detective Kenneth Doe; Pocono Mountain Regional Police Department ("PMRPD"); Monroe County Correctional Facility ("MCCF"); and the Monroe County Department of Probation and Parole ("MCDPP").  (Doc. 1, p. 1).

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1334(a).  We will now screen Plaintiff's Complaint as we are obliged to do for a *pro se* plaintiff proceeding *in forma pauperis*.

## II.    STANDARDS OF REVIEW

### A.    Screening

As stated, Plaintiff filed a Motion to proceed *in forma pauperis*.  (Doc. 2).  Because Plaintiff filed a Motion to Proceed *in forma pauperis,* we are obliged to screen Plaintiff's pleading to determine whether it is subject to dismissal under 28 U.S.C. §1915(e)(2)(B).[1]  As the Court stated in *O'Connell v. Sobina*, 2008 WL 144199, *3 (W.D. Pa.), "Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding *in forma pauperis* and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a Defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

In *Palencar v. Cobler Realty Advisors*, Civil No. 09-0325, M.D. Pa., 7-24-09 slip op. pp.

---

[1]The undersigned has been assigned this case for all pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(A).

5-6, this Court stated:

> Once it has been decided that a plaintiff should be accorded *in forma pauperis* status, the court then considers whether the complaint may be dismissed under 28 U.S.C. § 1915(e)(2)(B). *Douris v. Huff*, 2008 U.S. App. LEXIS 467, 469 (3d Cir. 2007); *see also Douris v. Newtown Borough, Inc.* 207 Fed.Appx. 242 (3d Cir. 2006). Section 1915(e)(2) provides:

> (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that --

>> (A) the allegation of poverty is untrue; or
>> (B) the action or appeal  - -
>>> (i)      is frivolous or malicious;
>>> (ii)     fails to state a claim on which relief may be granted; or
>>> (iii)    seeks monetary relief against a defendant who is immune from such relief.

> 28 U.S.C. § 1915(e)(2). This statute "is designed largely to discourage the filing of, and waste of, judicial and private resources upon baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (stating that "[dismissals on these grounds are often made sua sponte prior to the issuance of process, so as to spare prospective defendants the inconvenience and expense of answering [frivolous] complaints"). While the original statute permitted *sua sponte* dismissal only if an action was frivolous or malicious, Congress included failure to state a claim and seeking monetary relief from a defendant immune from suit as additional grounds for sua sponte dismissal of *in forma pauperis* cases. *Jones v. Bock*, 127 S.Ct. 910, 920, 166 L.Ed.2d 798 (2007); § 1915(e)(2)(B) (2000 ed.); 28 U.S.C. § 1915(d)( (1994 ed.).

*See also Wright v. Loftus*, Civil No. 09-1305, M.D. Pa., 11-20-09 Memorandum, p. 4, 2009 WL 4051244 (M.D. Pa.); *Leininger v. Twoton Inc.*, 2009 WL 1363386, * 2 (M.D. Pa.); *Maynard v. ENT Surgical Assoc.*, Civil No. 09-1993, M.D. Pa. (1-26-10 Memorandum); *McIntyre v. City of*

*Wilmington*, 360 Fed. Appx. 355, 356 (3d Cir. 2010) (court stated that screening process was required by 28 U.S.C. §1915 for civil action filed by non-inmate seeking to proceed *in forma pauperis*).

Thus, § 1915(e) obligates the Court to engage in a screening process when a person wishes to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Despite the fact that Plaintiff is not an inmate complaining about prison conditions, §1915(e)(2) applies to all *in forma pauperis* complaints, and not just to prisoners. *See Grayson v. Mayview State Hosp.*, 293 F3d 103, 110, n. 10 (3d Cir. 2002); *Lopez v. Smith*, 203 F. 3d 1122, 1129 (9th Cir. 2000); *Williams v. Marino,* Civil No. 03-0632, M.D. Pa. January 12, 2004, Memorandum and Order, p. 4.

**B.      Section 1983 Standard.**

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. *Parratt v. Taylor*, 451 U.S. 527 (1981); *Kost v. Kozakiewicz*, 1 F. 3d 176, 184 (3d Cir. 1993); *Fisher v. Matthews,* 792 F.Supp.2d 745 (M.D. Pa. 2011). Further, Section 1983 is not a source of substantive rights. Rather, it is a means to redress violations of federal law by state actors. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).[2] *See also Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 498-499 (M. D. Pa. 2005).

_____

[2]Plaintiff alleges in his pleading that Defendants are state agencies and state actors.

It is well-established that personal liability under section 1983 cannot be imposed upon a state official based on a theory of *respondeat superior*. *See, e.g., Rizzo v. Goode*, 423 U.S. 362 (1976); *Hampton v. Holmesburg Prison Officials*, 1546 F.2d 1077, 1082 (3d Cir. 1976); *Parratt, supra*. It is also well-settled in the Third Circuit that personal involvement of defendants in alleged constitutional deprivations is a requirement in a § 1983 case and that a complaint must allege such personal involvement. *Id.* Each named defendant must be shown, through the complaint's allegations, to have been personally involved in the events or occurrences upon which Plaintiff's claims are based. *Id.* As the Court stated in *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs . . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

*See also Fisher v. Matthews,* 792 F.Supp.2d 745 (M.D. Pa. 2011)(citing *Rode, supra).*

**C.     Motion to Dismiss Standard.**

In *Reisinger v. Luzerne County*, 712 F.Supp. 2d 332, 343-344 (M.D. Pa. 2010), the Court stated:

> The Third Circuit Court of Appeals recently set out the appropriate standard applicable to a motion to dismiss in light of the United States Supreme Court's decisions *Bell Atlantic Corp. v. Twombly,* 550 U.S. 433 (2007), and *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (2009). "[T]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim that relief is plausible on its face.' " *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 570). The Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. Moreover, it continued, "[d]etermining whether a complaint states a plausible

claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted). *McTernan v. City of York,* 577 F.3d 521, 530 (3d Cir.2009). The Circuit Court discussed the effects of *Twombly* and *Iqbal* in detail and provided a road map for district courts presented with a motion to dismiss for failure to state a claim in a case filed just a week before *McTernan, Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir.2009).

[D]istrict courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [ *Iqbal,* 129 S.Ct. at 1949.] Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege a plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Philips [v. Co. of Allegheny],* 515 F.3d [224,] 234-35 [ (3d Cir.2008) ]. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.' " *Iqbal,* 129 S.Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

The Circuit Court's guidance makes clear that legal conclusions are not entitled to the same deference as well-pled facts. In other words, "the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.' " *Guirguis v. Movers Specialty Services, Inc.,* No. 09-1104, 2009 WL 3041992, at *2 (3d Cir. Sept. 24, 2009) ( *quoting Twombly,* 550 U.S. at 555) (not precedential).

*See also Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 588-589 (W.D. Pa. 2008).

## III.    COMPLAINT ALLEGATIONS

In his Complaint, Plaintiff states that he was arrested by detectives of PMRPD on criminal charges stemming from an incident that occurred on August 4, 2010 in Monroe county.  (Doc. 1, p. 3).  Plaintiff states in his PMRPD statement  that he, his girlfriend Wanda Pabon and a friend named Mr. Rudy were

at Ms. Pabon's house in Coolbaugh Township located in Monroe County, and at the urging of Mr. Rudy, Plaintiff left the house to get some pizza. (Doc. 1, p. 6; Pocono Mountain Regional Police Statement Form given by [Plaintiff] David Vega). Plaintiff alleges that he was suspicious of Mr. Rudy's motives because of his insistence that Plaintiff leave the house for food, and avers that because of his suspicion, he decided to record any incident that would occur in the house, and he returned to the house about two to five minutes after he left. When he returned to the house, through the window he witnessed Mr. Rudy "raping [Plaintiff's] girlfriend." (*Id.*). Plaintiff stated that his wallet also was not where he had seen it before he left for food, and that Mr. Rudy eventually gave the wallet back to him and offered Plaintiff one thousand dollars ($1,000.00) if Plaintiff did not call the police to report the alleged rape and theft. (Doc. 1, p. 6; Pocono Mountain Regional Police Statement Form given by [Plaintiff] David Vega).

However, as a result of this August 4, 2010 incident, Plaintiff was arrested by Defendants Dunlap and Does of the PMRPD and charged with the following: two counts of communications interception; two counts of harassment; robbery; theft by unlawful taking; receiving stolen property; possession of an instrument of a crime with intent to use it criminally; two counts of intimidation of a witness; criminal attempt (theft extortion/threat to accuse another); and criminal attempt (theft extortion/ expose secret). (Doc. 1, p. 6; Court of Common Pleas of Monroe County, Criminal Docket, CP-45-CR-0001803-2010).[3]

According to the Court of Common Pleas of Monroe County Criminal Docket, all charges except for one count of communications interception were nolle prossed on January 5, 2011, and Plaintiff

---

[3]We take judicial notice that we obtained Plaintiff's docket sheet from the Court of Common Pleas of Monroe County, Docket Number CP-45-CR-0001803-2010.

entered a guilty plea on the one remaining count of communications interception. (Court of Common Pleas of Monroe County Criminal Docket, Docket # CP-45-CR-0001803-2010). The Monroe County Court of Common Pleas sentenced Plaintiff to six (6) to twelve (12) months in the Monroe County Correctional Facility, and Judge Miller, deciding Plaintiff had served the minimum sentence, released Plaintiff from prison and placed him on immediate parole. (*Id.*). However, on May 25, 2011, a Petition for Violation of Parole was filed, and, as a result of his charged parole violation, Plaintiff was again arrested and returned to prison, seemingly at Rikers Island. (Doc. 1, p. 4; Court of Common Pleas of Monroe County Criminal Docket, CP-45-CR-0001803-2010). It appears that in August 2012, when Plaintiff filed his instant Complaint, he had been released from Rikers Island and now resides in Bronx, New York.

Plaintiff filed the instant § 1983 Complaint based on these series of events, and stated the following in his Statement of Claim:

> Fact- Scott Dunlap and Kenneth (Partner) was given evidence of a rape and they neglected due process and proper procedure by not arresting the rapist. But focused on me because of my past history violating my rights as a citizen of the United States of America. Both detectives had a sworn duty to serve and protect but failed.

> Fact- Monroe County Correctional Facility released me from jail without signing release papers informing me where to report for parole causing false arrest and warrant in which I'm sitting in jail because of their error and neglect of due process and procedures.

(Doc. 1, p. 4).

Based on these facts, Plaintiff alleges that he was falsely arrested on two separate occasions in violation of his Fourth Amendment protection against false arrest. Regarding the alleged first false arrest, Plaintiff alleges that he was falsely arrested by Defendants Dunlap and

Does because Mr. Rudy was, according to Plaintiff, raping Plaintiff's girlfriend and then attempting to bribe Plaintiff to keep quiet. (Doc. 1, p. 4). Basically, Plaintiff avers that Defendants Dunlap and Doe failed to properly investigate Pabon's rape, and that they "neglected due process and proper procedure by not arresting the rapist." (*Id.*). Plaintiff also alleges that Defendants Dunlap and Doe focused their investigation on him due to his past history. (*Id.*).

Regarding the alleged second false arrest, Plaintiff alleges that after he was released from Defendant MCCF, he was falsely arrested for a parole violation because his MCCF release papers did not state where he should report to parole. Plaintiff avers that Defendantn MCDPP caused him to be falsely arrested on the parole violation and caused the issuance of an arrest warrant resulting in his confinement at Rikers Island. (*Id.*).

Plaintiff also alleges that his Fourteenth Amendment procedural due process rights were violated on two separate occasions: (1) when he was arrested initially on August 11, 2010 for the August 4, 2010 incident; and (2) when he was arrested on May 24, 2011 for his parole violation. (*Id.*). (Doc. 1, p. 4).

Plaintiff claims that as a result of these constitutional violations, he has experienced "pain and mental torture [and] emotional distress" and is on medications for Post Traumatic Stress Disorder and Schizophrenia "because of the environment in which [Plaintiff] was placed." (Doc. 1, p. 4).[4] As relief, Plaintiff requests compensatory and punitive damages. (*Id.*, p. 5).

---

[4]We note that Plaintiff does not request emotional distress damages.

## IV.    DISCUSSION

### A.    OFFICIAL CAPACITY DAMAGES

To the extent that Plaintiff requests monetary damages from Defendants in their official capacities, we will recommend that any official capacity damages relief request be dismissed with prejudice because Plaintiff can only request relief from Defendants in their individual or personal capacities. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Mitchell v. Luckenbill*, 680 F.Supp. 2d 672, 681 (M.D. Pa. 2010).

### B.    DEFENDANTS PMRPD, MCCF AND MCDPP

Additionally, we will recommend that Defendants Pocono Mountain Regional Police Department, Monroe County Correctional Facility, and Monroe County Department of Probation and Parole be dismissed with prejudice because they are not "persons" under § 1983.  A prison (including any department therein) is not a "person" subject to suit under § 1983. *See Pavalone v. Lackawanna Co. Prison*, Civil Action No. 1:11-CV-1444, 2011 WL 3794885, at *3 (M.D. Pa. Aug. 26, 2011) (citing *Will v. Mich. Dept. Of State Police*, 491 U.S. 58 (1989) ("Because a prison or correctional facility is not a 'person' within the meaning of § 1983, the complaint against [Lackawanna County Prison] will be dismissed."); *Phippen v. Nish*, 223 F. App'x 191, 192 (3d Cir. 2007) ("[State Correctional Institution Waymart] is not a 'person' under § 1983.").

Additionally, personal liability under section 1983 cannot be imposed upon a state

official based on a theory of *respondeat superior*. *See Rode, supra*; *Ascenzi v. Diaz*, 2007 WL 1031516, *3 (M.D. Pa.)("supervisory personnel are only liable for the § 1983 violations of their subordinates if they knew of, participated in or acquiesced in such conduct")(citations omitted).

Furthermore, even if the Court found any of these three (3) Defendants to be "persons" under § 1983, we would still recommend dismissal of these Defendants with prejudice because Plaintiff has failed to state a *Monell* claim against any one of these Defendants. When a claim against a municipality or governmental entity such as the Defendants PMRPD, MCCF and MCDPP is based on §1983, the entity can only be liable when the alleged constitutional violation implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. *Monell v. Department of Social Servs.*, 436 U.S. 658, 691, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A governmental custom for purposes of Section 1983 is defined as "such practices of state officials...[as are] so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Id*. at 691. Custom can be shown by evidence of knowledge and acquiescence by high-level policy-makers. *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989). The court must then inquire "whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). The policy must be the "moving force" behind the constitutional violation. *Cornfield v. Consolidated High Sch. Dist. No. 230*, 991 F.2d 1316 (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion)). However, even if these three Defendants were subject to suit under § 1983, Plaintiff

has failed to allege a *Monell* claim because he has not pointed to any policy or custom that has supported or led to a § 1983 violation. Therefore, because Defendants Pocono Regional Police Department, Monroe County Correctional Facility and Monroe County Department of Probation and Parole are not "persons" under § 1983, because § 1983 liability cannot be based on the theory of *respondeat superior* and because, even if these Defendants were "persons" under § 1983, Plaintiff has still failed to allege a *Monell* claim against any one of them, we will recommend that these three (3) Defendants be dismissed with prejudice as we find futility in allowing Plaintiff to amend his Complaint against these Defendants. *See Grayson v. Mayview State Hospital*, 293 F.3d at 111; *Alston v. Parker*, 363 F.3d at 235-236.

### C.    Fourth Amendment False Arrest Claims

#### 1.    First False Arrest Claim

The first arrest Plaintiff claims was a false arrest in violation of the Fourth Amendment occurred on August 11, 2010, with the arrest conducted by Defendants Dunlap and Doe (both detectives of Defendant PMRPD) and based on the aforementioned August 4, 2010 incident. (Doc. 1, p. 4). Plaintiff basically claims that instead of arresting Mr. Rudy, the person Plaintiff alleges raped Wanda Pabon and then bribed Plaintiff, Defendants Dunlap and Doe falsely arrested Plaintiff. (*Id.*). Plaintiff alleges that Defendants Dunlap and Doe did not conduct a proper investigation and arrested him based on his past history. (*Id.*).

 In *Cummings v. City of Philadelphia*, 137 Fed. Appx. 504, 506 (3d Cir. 2005), the Third Circuit provided the standard used to properly allege a Fourth Amendment false arrest claim:

> To succeed on a § 1983 Fourth Amendment violation due to a false arrest, a
> plaintiff must prove that (1) the officer "knowingly and deliberately, or with a

reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir. 2000) (internal quotation marks and citations omitted); *see also, Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978). Omissions are made with reckless disregard "if an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know." *Wilson,* 212 F.3d at 788 (internal quotation marks and citations omitted).

However, it is unnecessary to even examine the merits of Plaintiff's Fourth Amendment false arrest claim under this aforementioned standard because Plaintiff's first false arrest claim is barred by the *Heck* favorable termination rule. The incident that led to the first false arrest claim occurred on August 4, 2010 and Plaintiff was arrested on August, 11, 2010. Plaintiff filed his Complaint on August 8, 2012. The law is well-settled that the statute of limitations for a § 1983 claim in Pennsylvania is two years.

In *Karchnak v. Swatara Township, et al.*, 540 F. Supp. 2d 540, 545-46 (M.D. Pa. 2008), this Court stated:

> Section 1983 does not contain a statute of limitations for cases brought under its purview. Thus, for § 1983 actions, a court must look to the state statute of limitations for personal injury claims. *Sameric Corp. Of Del., Inc. v city of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). In Pennsylvania, the statute of limitations for personal injury is two years. 42 Pa. Cons. Stat. § 5524. Thus, all of Plaintiff's § 1983 claims are subject [to] this two-year statute of limitations.

A cause of action under § 1983 accrues "when the plaintiff knew or should have known of the injury upon which the action is based." *Sameric Corp. Of Del., Inc. v city of Phila.*, 142 F.3d 582, 599 (3d Cir. 1998). Based on Plaintiff's Complaint, Exhibits, and criminal docket, we find that Plaintiff knew or should have known of his Fourth Amendment false arrest claim

against Defendants Dunlap and Doe on August 11, 2010, the day he was arrested. On August 8, 2010, Plaintiff provided the Pocono Mountain Regional Police with a statement about the August 4, 2010 incident that Rudy had raped Ms. Pabon and that he allegedly did not partake in any wrongdoing on the date the incident occurred. (Doc. 1, p. 6). Plaintiff also admitted that he recorded the incident. (Id.) Therefore, on August 4, 2010, based on what Plaintiff stated to the Pocono police, he knew of his claim that he was being falsely arrested on August 11, 2010 in violation of his Fourth Amendment rights. (*Id.*). Therefore, we find that the statute of limitations began on August 11, 2010, the date of the alleged unlawful arrest of Plaintiff. Thus, Plaintiff timely filed his Complaint on August 8, 2012.[5]

However, we find that Plaintiff's first false arrest claim is barred by the *Heck* favorable termination rule because neither Plaintiff's conviction nor his sentence regarding his August 11, 2010 arrest by Defendants Dunlap and Doe has been overturned by the Monroe County Court of Common Pleas or any appeals court, and success on his § 1983 false arrest claim would invalidate his conviction and sentence in violation of the *Heck* principles.

In *Braggs v. Flatt*, 2009 WL 2750120, *4-*5 (W. D. Pa.), the Court stated:

In *Heck,* the Supreme Court held that a prisoner could not maintain a § 1983 action for damages under the civil rights laws if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence ... unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487. The Court has summarized this so-called "favorable termination requirement" by explaining that a "state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct

---

[5]Plaintiff's Monroe County criminal docket shows that he was arrested on August 11, 2010 regarding the August 4, 2010 incident as described.

leading to conviction or internal prison proceedings)-if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson,* 544 U.S. 74, 81-82, 125 S.Ct. 1242, 161 L.Ed.2d 253 (2005). *See also Hill v. McDonough,* 574 U.S. 73 (2006); *Muhammad v. Close,* 540 U.S. 749, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004).

Further, in *Edwards v. Balisok,* 520 U.S. 641, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997), the Supreme Court extended *Heck* further by holding that a state prisoner's § 1983 action challenging a prison disciplinary sanction and seeking "money damages, based on allegations of deceit and bias on the part of the decision maker that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983" unless the disciplinary sanction has been overturned or invalidated. 520 U.S. 641, 648, 117 S.Ct. 1584, 137 L.Ed.2d 906. (Emphasis added); *Kalomiris v. Monroe County Syndicate,* 2009 WL 73785, *8 (M.D. Pa.); *Arango v. Winstead,* 352 Fed. Appx. 664, 665-666 (3d Cir. 2009); *Taylor v. Scism*, 201 WL 2470806, *3 (M.D. Pa.).

As stated on January 5, 2011, Plaintiff pled guilty to Interception of Communications and he was immediately sentenced to six to twelve months in prison. The other charges against Plaintiff were nolle prossed by the Monroe County Court upon notice by the Commonwealth of Pennsylvania. Thus, we note that any claim of Plaintiff which would impugn the validity of his Monroe County conviction and sentence is precluded by *Heck*. *See Washam v. Stesis*, 321 Fed. Appx. 104, 105 (3d Cir. 2009); *Sandy v. Lehigh Co. Dist. Attorney*, 2008 WL 910001, *1-*2 (E.D. Pa.). Analysis of Plaintiff's claim would violate the *Heck* favorable termination rule because Plaintiff's conviction and sentence have not been invalidated or overturned by the Monroe County Court of Common Pleas, by any state appellate court decision or by a federal court in a habeas petition review.

To analyze the merits of these claims would mean the Court would be invalidating the conviction and sentence the Monroe County Court of Common Pleas imposed on Plaintiff, and

this would clearly be in violation of the *Heck* favorable termination rule. To re-emphasize, Plaintiff must seek collateral relief for his alleged Fourth Amendment unlawful arrest claim against Defendants in a Federal Writ of Habeas Corpus Petition pursuant to 28 U.S.C. §2254 as they are barred from being raised in a § 1983 action by the *Heck* "favorable termination rule".

Therefore, we will recommend that Plaintiff's first false arrest claim against Defendants Dunlap and Doe be dismissed with prejudice because Plaintiff's claim is barred by the *Heck* favorable termination rule and we find it would be futile to allow Plaintiff to amend his Complaint with regards to this first false arrest claim against Defendants Dunlap and Doe. *See Grayson v. Mayview State Hospital*, 293 F.3d at 111*; Alston v. Parker*, 363 F.3d at 235-236.

### 2.    Second False Arrest Claim

Plaintiff also raises a second Fourth Amendment false arrest claim against Defendant MCCF. In his Complaint, he states, "Fact- Monroe county Correctional Facility released me from jail without signing release papers informing me where to report for Parole causing false arrest and [parole violation] warrant in which I'm sitting in jail [] because of their error and neglect of due process and procedures." (Doc. 1, p. 4). Plaintiff was released from MCCF on January 5, 2011 immediately after he was sentenced for time served. On May 24, 2011, the Monroe County District Attorney filed a Petition for Violation of Parole against Plaintiff. (Id.).

The first issue evident with this claim is that Plaintiff raises his claim against Monroe County Correctional Facility, which as discussed, is not a proper Defendant because a prison is not a "person" under § 1983 standards, and, therefore, cannot be party to a § 1983 suit.

Additionally, even if Monroe County Correctional Facility could be considered a "person" under § 1983 standards, the only way in which this Defendant could be liable for a violation under § 1983 is if Plaintiff alleged a claim against this Defendant under *Monell*, which as discussed, he has not. Thus, we will recommend that Plaintiff's second false arrest claim against Defendant MCCF be dismissed with prejudice as we find it would be futile to allow Plaintiff to amend his Complaint against this Defendant. *See Grayson v. Mayview State Hospital*, 293 F.3d at 111; *Alston v. Parker*, 363 F.3d at 235-236.

### D.     Fourteenth Amendment Procedural Due Process Claims

### 1.     First Procedural Due Process Claim

Plaintiff alleges that his Fourteenth Amendment procedural due process rights were violated on the following two separate occasions: (1) during his initial arrest by Defendants Dunlap and Doe on August 11, 2010 stemming from the August 4, 2010 incident; and (2) during his second arrest that was based on violation of the parole conditions that were part of his January 5, 2011 sentence stemming from his conviction on the August 4, 2010 incident, as Defendant MCCF allegedly failed to tell Plaintiff where to report for parole.

In *Marcavage v. Borough of Lansdowne*, 2012 U.S. App. LEXIS 16621 (3d Cir. Pa. Aug. 9, 2012), the Third Circuit stated:

> As we previously noted, the Fourteenth Amendment requires that all individuals be afforded due process – that is "the opportunity to be heard at a meaningful times and in a meaningful manner" – before the denial of life, liberty or property under the law. Mathews, 424 U.S. at 333. When an individual brings suit under 42 U.S.C. § 1983 for a state actor's alleged failure to provide procedural due process, we consider "(1) whether the asserted individual interest are encompassed within the [F]ourteenth [A]mendment's protection of life, liberty or property; and (2) whether the procedures available provided the plaintiff with

due process of law." Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000) (internal quotation marks and citations omitted).

However, in our analysis, because we find, as discussed below, that Plaintiff's Procedural Due Process claims are barred by the *Heck* favorable termination rule, we do not find it necessary to delve into the merits of Plaintiff's Procedural Due Process claims.

With regards to the first procedural due process claim arising from the initial arrest on August 4, 2010, as discussed, this claim is *Heck*-barred. Plaintiff's procedural due process claim regarding his initial arrest is barred by the *Heck* favorable termination rule because, as discussed, according to this rule, this Court is prohibited from examining this claim unless and until Plaintiff's underlying January 5, 2011 conviction and/or sentence is overturned. *See Heck, supra*.

Therefore, we will recommend that the procedural due process claim based on Plaintiff's initial arrest on August 11, 2010 be dismissed with prejudice because this claim is barred by the *Heck* favorable termination rule and we find futility in allowing Plaintiff to amend his Complaint with regards to this claim. *See Grayson v. Mayview State Hospital*, 293 F.3d at 111; *Alston v. Parker*, 363 F.3d at 235-236.

### 2. Second Procedural Due Process Claim

With regards to Plaintiff's second procedural due process claim stemming from the arrest based on his parole violation that was part of his January 5, 2011 sentence, the first evident issue with this claim is that it was raised against Monroe County Correctional Facility, which as discussed, is not a proper Defendant because a prison is not a "person" under § 1983 standards, and, therefore, cannot be party to a § 1983 suit. Additionally, even if Monroe County

18

Correctional Facility could be considered a "person" under § 1983 standards, the only way in which this Defendant could be liable for a § 1983 violation is if Plaintiff alleged a *Monell* claim, which, as discussed, he has not.

Furthermore, even if Plaintiff had alleged this procedural due process claim against a proper Defendant, we find that this claim would still be barred by the *Heck* favorable termination rule as discussed because part of Plaintiff's January 5, 2011 sentence that resulted from the first arrest was that he would be placed on parole, and it is the parole violation, or violation of his sentence, for which Plaintiff was arrested a second time. Because Plaintiff's sentence that encompassed the parole terms Plaintiff violated and was subsequently arrest for violating has not been overturned or overruled, Plaintiff's second false arrest claim is barred by the *Heck* favorable termination rule. *See Heck, supra*.

Therefore, we will recommend that Plaintiff's procedural due process claim based on his second arrest, which was based on violation of his parole that was part of his sentence arising from the first arrest on August 4, 2010, be dismissed with prejudice because this claim was not raised against a proper Defendant and because this claim is barred by the *Heck* favorable termination rule.

## V.    RECOMMENDATION

Based on the foregoing discussion, we respectfully recommend that:

1. Defendants Pocono Mountain Regional Police Department, Monroe County Correctional Facility and the Monroe County Department of Probation and Parole be dismissed with prejudice.

2.  Plaintiff's Fourth Amendment false arrest claims be dismissed with prejudice.

3.  Plaintiff's Fourteenth Amendment procedural due process claims be dismissed with prejudice.

4.  Plaintiff's request for damages against the Defendants in their official capacities be dismissed with prejudice.

5.  Plaintiff's request for damages for emotional distress be dismissed with prejudice.

6.  Defendants Dunlap and Doe be dismissed with prejudice.

7.  This case be closed.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 26, 2012**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID VEGA, | : | CIVIL ACTION NO. **3:12-CV-1767** |
| | : | |
| Plaintiff | : | (Judge Conaboy) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| SCOTT DUNLAP, *et al.*, | : | |
| | : | |
| Defendants | : | |

## NOTICE

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **November 26, 2012.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen (14)
> days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a *de novo* determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where
> required by law, and may consider the record developed before the
> magistrate judge, making his or her own determination on the basis

of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Failure to file timely objections to our foregoing Report and Recommendation may constitute a waiver of any appellate rights.


_____ **s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: November 26, 2012**